12/28/2010 16:58 FAX

0029566958

only a part of the Property is taken, the Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
      (A)   Borrower's Obligations
            Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

            Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

      (B)   Lender's Rights
            Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
            Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

            Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

            Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made

SD001H (01.30.05/1-05) A011                    DEED OF TRUST-ADJUSTABLE                    CA
                                                      Page 8

0029556958

In this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

### 12.   MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges. and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

### 13.   LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 15881 LAS SOLONAS STREET, WESTMINSTER, CA   92883. * * * * * * * * * * * * * * * * * * *
A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15.   GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations. including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16.   BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17.   LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender. Persons authorized by Lender. or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17. I agree that the

Exhibit A to Notice of Removal
page 26

0029556958

tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS
      An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sums Secured after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

19.   CLERICAL ERRORS
      In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

20.   LOST, STOLEN OR MUTILATED DOCUMENTS
      If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

21.   WAIVER OF STATUTE OF LIMITATIONS
      I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

22.   CAPTIONS
      The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

SD001J (01.30.05/1-05) A01R                 DEED OF TRUST-ADJUSTABLE                          CA
                                                  Page 10

12/28/2010  16:58 FAX

0029668968

### 23.   MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

### 24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)   The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)   If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

SD001K (01.30.08/1-08) A01L                DEED OF TRUST-ADJUSTABLE                CA

Page 11

Exhibit A to Notice of Removal
page 28

12/28/2010 16:59 FAX

0029558958

**25.   FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

**26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender;

(v)   the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27.   SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (01.30.06/1-05) A01M          DEED OF TRUST-ADJUSTABLE          CA
Page 12

0029556958

**28.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.    RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.    STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (01.30.05/1-05) A01N          DEED OF TRUST-ADJUSTABLE          CA
                                     Page 13

0028556958

**31.   ( X )  QUICK QUALIFYING LOAN PROGRAM**
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.   ( X )  OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that   (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (01.30.08/1-05) A010            DEED OF TRUST-ADJUSTABLE            CA
                                       Page 14

Exhibit A to Notice of Removal
page 31

0029568968

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
**ALONZO MITCHELL**

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD00101 (01.30.05/1-05) A01P

DEED OF TRUST-ADJUSTABLE
PAGE 15 OF 15

CA

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss.

On _5-19-05_ before me, _L. West, notary public_
(Date) (Name and Title of Officer (e.g. "Jane Doe, Notary Public"))

personally appeared _Alonzo Mitchell_
(Name(s) of Signer(s))

☐ personally known to me

☒ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

L. MARTIN
Commission # 1551944
Notary Public - California
Los Angeles County
My Comm. Expires Feb 12, 2009

Place Notary Seal Above

WITNESS my hand and official seal.

_L. West_
Signature of Notary Public

―――――――――――― OPTIONAL ――――――――――――

Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.

**Description of Attached Document**

Title or Type of Document: _Deed of Trust_

Document Date: _5-19-05_ _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OR SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OR SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

## GOVERNMENT CODE SECTION 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE
NOTARY SEAL ON THE DOCUMENT TO WHICH THIS
STATEMENT IS ATTACHED READS AS FOLLOWS:


NAME OF NOTARY:  L. Martin

DATE COMMISSION EXPIRES:  02/12/09

COUNTY WHERE BOND IS FILED:  Los Angeles

COMMISSION NO.:  1551944

VENDOR NO.:  NNA1

PLACE OF EXECUTION:  Anaheim

DATE: 05/24/05

Stewart Title of California

Ana I. Mestas

# stewart
title

## Exhibit "A"

94505993

DESCRIPTION: THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

*LOT 15 OF TRACT NO. 4810, IN THE CITY OF WESTMINSTER, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 177, PAGES 18 TO 20 INCLUSIVE OF MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAD COUNTY.*

LOAN NUMBER: 0029556958

**BORROWER(S)' SPOUSE(S):** The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

BORROWER(S)' SPOUSE(S):

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

SD875A1 (04,15,04/1-04) L75A

CA

L75E

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California,

County of _Los Angeles_ } ss.

On _5-19-05_ before me, _L. Last notary public_
        Date                          Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Barbara A. Mitchell_
                                          Name(s) of Signer(s)

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

_[signature]_
                                Signature of Notary Public

L. MARTIN
Commission # 1561944
Notary Public · California
Los Angeles County
My Comm. Expires Feb 12, 2009

Place Notary Seal Above

─────────────── OPTIONAL ───────────────
Though the information below is not required by law, it may prove valuable to persons relying on the document
and could prevent fraudulent removal and reattachment of this form to another document.

Description of Attached Document
Title or Type of Document: _Deed of Trust_

Document Date: _5-19-05_                          Number of Pages: _____

Signer(s) Other Than Named Above: _____

Capacity(ies) Claimed by Signer(s)

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Individual | ☐ Individual |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer is Representing: _____ | Signer is Representing: _____ |

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402     Item No. 5907     Reorder: Call Toll-Free 1-800-876-6827

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 2

Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

APN #: 108-612-15
Property Address:
15861 LAS SOLONAS STREET
WESTMINSTER, CALIFORNIA 92683

NTSP20100015003412

Space above this line for Recorder's use only

Trustee Sale No. : 20100015003412        Title Order No.: 100250599        FHA/VA/PMI No.:

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 05/19/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEX WEST, L.L.C. as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 05/31/2005 as Instrument No. 2005000416897 of official records in the office of the County Recorder of ORANGE County, State of CALIFORNIA,

EXECUTED BY:    ALONZO MITCHELL,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:    12/29/2010        TIME OF SALE:        12:00 PM
PLACE OF SALE:        AT THE NORTH FRONT ENTRANCE TO THE COUNTY COURTHOUSE, 700 CIVIC CENTER DRIVE WEST, SANTA ANA, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
        15861 LAS SOLONAS STREET, WESTMINSTER, CALIFORNIA 92683
APN#:        108-612-15

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $679,086.21.    The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
AGENCY SALES & POSTING
3210 EL CAMINO REAL, SUITE 200
IRVINE, CA 92602
714-730-2727
www.lpsasap.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.    ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NDEx West, L.L.C. as Trustee

_____    Dated: 11/26/2010

PCUS_NoticeOfTrusteeSale.rpt - P.h - 07/22/2010 - Ver-28                                        Page 1 of 1

# EXHIBIT B

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WACHOVIA MORTGAGE, a division of WELLS FARGO BANK
N.A. and DOES 1 through 50, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ALONZO MITCHELL, an individual,

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**DEC 28 2010**

ALAN CARLSON, Clerk of the Court

BY:      R. LUCEY      , DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Central Justice Center<br><br>700 Civic Center Drive West,<br>Santa Ana, California 92701 | CASE NUMBER:<br>*(Número de Caso):*<br><br>30-2010<br>00436313 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Moses S. Hall (SBN 153759), 2651 E. Chapman Ave., Suite 110, Fullerton, CA 92831. (714) 738-4830

**JUDGE FRANCISCO F. FIRMAT**
**DEPT. C15**

| DATE: **DEC 28 2010**<br>*(Fecha)* | **ALAN CARLSON** | Clerk, by<br>*(Secretario)* | **R. LUCEY** | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons. (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* WACHOVIA MORTGAGE, a division of WELLS FARGO BANK, N.A.

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
         ☒ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
         ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

Exhibit B to Notice of Removal
page 40

## 90 DAY STAY ORDER

(Revised Dec. 2010)

Case Name: Mitchell vs Wachovia Case No.: 10 - 436313

This case involves a CC § 2923.5 / *Mabry* claim and Plaintiff is seeking a temporary restraining order ("TRO") and a Preliminary Injunction hearing on said grounds. This Court recognizes that CC § 2923.5 and *Mabry* create an ungainly, inefficient, expensive process; the process involves a TRO hearing, a preliminary injunction hearing, law and motion hearings and potentially expedited discovery with an expedited trial date of this bifurcated issue. Also, that the legislative intent is for a non-judicial, not litigated foreclosure process. Plaintiff alleges that if a loan modification is obtained then the Complaint in this action will be dismissed, avoiding unnecessary law and motion, discovery, and costs of preparation for trial.

Pursuant to CCP § 128 and 187, in order to more efficiently handle a large and fast-growing caseload of non-judicial foreclosure cases and to preserve the equities and due process, this Court hereby declines to rule on the TRO and declines to set a hearing for the preliminary injunction at this time, and instead orders an early settlement conference process to seek an early resolution of the entire action:

1.  All foreclosure related activities are stayed per the terms of this order.

2.  This order is conditioned on Plaintiff taking the following actions: (1) paying an amount equal to the last scheduled monthly mortgage payment amount on or before the _15th_ day of each month, or any amount the parties agree is not in dispute as to the monthly mortgage payment. (2) keeping current on the payment of property taxes, (3) maintaining insurance on the property, and (4) serving all Defendants with the Summons, Complaint, this Order, the TRO application, and any other papers within five days of the entry of this Order in the same manner as the CCP provides for service of the summons and complaint, and filing proofs of service demonstrating same within 20 days of the date of entry of this Order. Failure to comply with the service requirements may result in the striking of this Order and cancellation of the Loan Modification Settlement Conference process. The monthly payment shall be $ _2 800. °°_ per month. If any payment is five days late, or the other conditions not fulfilled, Defendant's counsel may appear ex parte with 24 hours' notice to ask that this order be set aside.

3.  The Court hereby sets a Readiness Conference for Wednesday _JAN 5, 2011_ at 2:30 p.m. in Dept. C-15 to determine if Defendant has received all the Plaintiff's financial information and documents necessary for Defendant to participate in a meaningful settlement conference. Plaintiff is hereby ordered to provide all necessary financial information to Defendant's

counsel. At least 21 calendar days before the Readiness Conference, Defendant shall transmit to Plaintiff an itemized list of the documents it requires from Plaintiff. If Defendant receives all the information/documents prior to the date of the Readiness Conference, then defense counsel may phone Dept. C-15 and take the Readiness Conference off calendar and shall notify Plaintiff that the Readiness Conference will be taken off calendar within one hour of doing so. If all the information/documents have not been received, then both counsel and Plaintiff must appear at the Readiness Conference. If Plaintiff fails to appear or fails to show diligence in supplying the information, any or all of the following may occur: (1) Plaintiff may be sanctioned for violation of a court order, (2) the MSC explained below may be vacated and the CC § 2923.5 / *Mabry* claim, and any claims relying thereon or derived therefrom, may be stricken from the Complaint, (3) this Order may be dissolved, or (4) entry of any other orders the Court deems proper under the circumstances. Defendant must file a "Notice of Appearance" and first appearance filing fee (instead of an Answer or Demurrer) before the date of the scheduled Readiness Conference.

4. A Loan Modification Settlement Conference ("MSC") is hereby scheduled on Friday ___JANUARY 28, 2011___ at 8:30 a.m. in Department C-8 of this Court. Good faith participation by the note holder/servicer Defendant in a meaningful settlement conference will be deemed full compliance with the requirements of CC § 2923.5 and the *Mabry* decision, and will result in this Court striking from the Complaint the CC § 2923.5 cause of action, and any claims relying on or derived from said statute. A foreclosure sale shall not be held until after 120 days from the date of this order and conclusion of a meaningful MSC (unless otherwise vacated by the Court).. By participating in such conference the servicer is representing that it is the duly authorized servicer per relevant contracts to which it is a party and has full authority to modify the loan at issue.

5. Litigation is stayed for 90 days from the date of this order. For purposes of filing a responsive pleading, Defendants will be deemed served on the date this order expires (90 days after entry of the order). If the MSC process is not concluded within 90 days, Defendant's time to plead will be deemed extended until 30 days after completion of a meaningful MSC. Defendant(s) demurrer/motion to strike, if any, shall receive a hearing date within 30 days from filing the motion.

6. The Court hereby sets a Case Management Conference ("CMC") at 2:30 p.m. on Thursday___APRIL 27, 2011___ in Department C-15. At least 15 calendar days' in advance of the CMC, the parties shall file and serve their Case Management Statement.

7. If any party deems that this Order or any provision thereof is inappropriate for this case, then counsel may be heard in this department at 1:30 p.m. for an ex parte hearing, with 24 hours' notice to all parties, and the Court will, at that time, reconsider this Order, which may include striking any inappropriate clauses, setting aside this Order, and / or reconsidering the request for a TRO.

8. Plaintiff/Plaintiff's counsel hereby agrees to the terms of this 90 day stay order and specifically agree that Defendant(s) participation in this stay order and MSC process shall be deemed full compliance with the requirements of CC 2923.5 and the Mabry decision and that any claims relying or derived from said statute will be deemed moot and shall be stricken from the Complaint.

_12-28 - 2010_
Date

_Moses S. Hall_
Plaintiff/Counsel

IT IS SO ORDERED.

_DEC 2 8 2010_
Date

_Paul T. McE___
Judge of the Superior Court
DAVID T. McEACHEN

Moses S. Hall, Esq., (SBN 153759)
**LAW OFFICE OF MOSES S. HALL**
2651 E. Chapman Avenue, Suite 110
Fullerton, California 92831
Telephone: (714) 738-4830
Fax: (714) 992-7916

Attorney for Plaintiff,
ALONZO MITCHELL

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 28 2010

ALAN CARLSON, Clerk of the Court

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

CENTRAL JUSTICE CENTER

| | |
|---|---|
| ALONZO MITCHELL, an individual,<br><br>            Plaintiff<br><br>vs.<br><br>WACHOVIA MORTGAGE, a division of WELLS FARGO BANK, N.A., and DOES 1 through 50, inclusive,<br><br>            Defendants. | Case No.<br><br>EXPARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER;  ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION;  DECLARATION OF ALONZO MITCHELL IN SUPPORT THEREOF<br><br>Date:  12/28/2010<br>Time:  1:30 P.M.<br>Dept.:  C15 |

///

Plaintiff, ALONZO MITCHELL (hereinafter referred to as "Plaintiff") hereby submits

the following Ex Parte Application For Temporary Restraining Order; Order To Show Cause Re

Preliminary Injunction and alleges as follows:

# I
## STATEMENT OF FACTS

The Plaintiff is the owner of a residence located at all times pertinent at 15871 Las

Solonas Street, Westminster, California 92683.  This residence had a mortgage secured by a deed

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
1

of trust which was subsequently acquired and/or administered by the Defendant WACHOVIA MORTGAGE, a division of WELLS FARGO BANK, N.A. (hereinafter, "WACHOVIA"). A true and correct copy of the Deed of Trust is attached as **Exhibit "1."** In 2010, the Plaintiff experienced financial difficulties and had difficulty paying the mortgage. WACHOVIA is currently attempting to foreclosure on Plaintiff without first satisfying the requirements of Civil Code section 2923.5.

## II
### CIVIL CODE SECTION 2923.5 REQUIRES A LENDER TO CONTACT THE BORROWER PRIOR TO FILING A NOTICE OF DEFAULT. IF A LENDER FAILS TO DO SO, THE NOTICE OF DEFAULT IS INVALID

Civil Code section 2923.5 became effective on September 6, 2008. Section 2923.5 provides:

> (a)(1) A mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to Section 2924 until 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (g).
> (2) A mortgagee, beneficiary, or authorized agent shall contact the borrower *in person or by telephone* in order to assess the borrower's financial situation and *explore options for the borrower to avoid foreclosure.* During the initial contact, the mortgagee, beneficiary, or authorized agent shall advise the borrower that he or she has the *right to request a subsequent meeting* and, if requested, the mortgagee, beneficiary, or authorized agent shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the *borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency.* Any meeting may occur telephonically. [Emphasis added]

Further, if a lender does not contact the Plaintiff, it is subject to the requirements of

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
2

Exhibit B to Notice of Removal page 45

section 2923.5(g) which provides:

> (g) A notice of default may be filed pursuant to Section 2924 when a mortgagee, beneficiary, or authorized agent has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgagee, beneficiary, or authorized agent. For purposes of this section, "due diligence" shall require and mean all of the following:

> (1) A mortgagee, beneficiary, or authorized agent shall first attempt to contact a borrower *by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.*

> (2)(A) After the letter has been sent, the mortgagee, beneficiary, or authorized agent *shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.*

> (3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgagee, beneficiary, or authorized agent *shall then send a certified letter, with return receipt requested.*
> [Emphasis added]

## III
## PLAINTIFF'S CONTENTIONS OF WRONGFUL CONDUCT BY DEFENDANTS

As per the declaration of the Plaintiff which is attached and submitted in support of this application, WACHOVIA never contacted him prior to filing the notice of default. The only contact he received were the notice of default and the notice of trustee's sale.

The above does not satisfy the requirements of section 2923.5 which mandates that the borrower must be contacted in person, and if such contact cannot be made after three attempts, the borrower must be sent a certified first class letter.

## IV
## ARGUMENT

**A.    Plaintiff Has The Right To Enforce Section 2923.5**

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

3

Exhibit B to Notice of Removal
page 46

The Court in *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 110 Cal.Rptr.3d 201

held that there is a private right of action to enforce section 2923.5. Specifically:

> The right conferred by section 2923.5 is a right to be contacted to "assess" and "explore" alternatives to foreclosure prior to a notice of default. It is enforced by the postponement of a foreclosure sale. *Therefore it would defeat the purpose of the statute to require the borrower to tender the full amount of the indebtedness prior to any enforcement of the right to-and that's the point-the right to be contacted prior to the notice of default*. Case law requiring payment or tender of the full amount of payment before any foreclosure sale can be postponed (e.g., *Arnolds Management Corp. v. Eischen* (1984) 158 Cal.App.3d 575, 578 ["It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."] ) arises out of a paradigm where, by definition, there is no way that a foreclosure sale can be avoided absent payment of all the indebtedness. Any irregularities in the sale would necessarily be harmless to the borrower if there was no full tender. (See 4 Miller & Starr, Cal. Real Estate (2d ed.1989) § 9:154, pp. 507-508.) By contrast, the whole point of section 2923.5 is to create a new, even if limited right, to be contacted about the possibility of alternatives to full payment of arrearages. *It would be contradictory to thwart the very operation of the statute if enforcement were predicated on full tender*. It is well settled that statutes can modify common law rules. (E.g., *Evangelatos v. Superior Court* 44 Cal.3d 1188, 1192 [noting that Civil Code sections 1431 to 1431.5 had modified traditional common law doctrine of joint and several liability].) [Emphasis added]

**B.  If Section 2923.5 Is Not Complied With, The Notice Of Default Is Invalid And No Foreclosure Sale Can Go Forward**

The Court in *Mabry, supra,* also held:

> If section 2923.5 is not complied with, then *there is no valid notice of default, and without a valid notice of default, a foreclosure sale cannot proceed*. 185 Cal.App.4th at 223 [Emphasis added]

**C.  The Court Has the Power to Grant a Temporary Restraining Order**

Code of Civil Procedure section 526 provides:

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER
4

(a) An injunction may be granted in the following cases:
(1) When it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually.

(2) When it appears by the complaint or affidavits that the commission or continuance of some act during the litigation would produce waste, or great or irreparable injury, to a party to the action.

(3) When it appears, during the litigation, that a party to the action is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the rights of another party to the action respecting the subject of the action, and tending to render the judgment ineffectual.

California Civil Code Section 527.6 states:

A temporary restraining order may be issued with or without notice upon an affidavit, that, to the satisfaction of the court, shows reasonable proof of harassment of the Petitioner by the Respondent, and that great or irreparable harm would result to the Petitioner.

**D.   Plaintiff Will Suffer Great and Irreparable Injury if the Foreclosure on Plaintiff's Residence is Not Enjoined Before the Merits of Her Action Can be Heard.**

To obtain a preliminary injunction, the moving party must establish that the responding party should be restrained from the challenged activity, pending trial, by showing (1) reasonable probability it will prevail on merits and (2) that harm to moving party resulting from not granting the preliminary injunction outweighs harm to the responding party from imposing the injunction. *Trader Joe's Co. v. Progressive Campaigns, Inc.* (1999) 73 Cal.App.4[th] 425, 429-430.   On application for preliminary injunction, trial court must determine which party is more likely to be injured by exercise of its discretion, and it must then be exercised in favor of that party. *Family Record Plan, Inc. v. Mitchell,* 172 Cal App 2d 235 (1959, Cal App 2d Dist).

*"The test for the determination of the question of whether or not a particular injury will be irreparable seems to be this: Will a verdict of damages at law afford complete compensation for it? If so, then the fundamental ground for invoking the power of equity is lacking--to wit: a want of adequate remedy at law."* Bishop v. Owens, 5 Cal.App. 83, 87 (1907).

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

5

1   Further, "the law generally presumes real property is unique..." *Real Estate Analytics, LLC v.*

2   *Vallas*, 160 Cal. App. 4th 463, 466 (2008).

3        Here, it is likely that Plaintiff will prevail in his action based on WACHOVIA's violation

4   of Civil Code section 2923.5. Similarly, it is certain that Plaintiff will suffer a great and

5   irreparable injury if Defendants actions are not enjoined before Plaintiff's claims can be heard.

6   Because real property is unique, it is presumed that damages at law are inadequate to compensate

7   Plaintiff for the loss of his property. Therefore, the injury that Plaintiff is facing is irreparable

8   because, by virtue of Defendants reselling Plaintiff's property, Plaintiff would forever be barred

9   from having a chance at recovering the home he has resided in for many years.

10        An example of the balancing of hardships described above is seen in *Youngblood v. Wilcox*,

11   (207 Cal.App.3d 1368). In *Youngblood*, a member sued a county club to prevent it from terminating

12   her membership rights and use of the club facilities. The court balanced the hardships and favored

13   granting relief because a preliminary injunction posed no significant "injury" to the county club,

14   while denial would force the member to incur substantial social and recreational expenses elsewhere.

15   (207 Cal.App.3d 1368, 1375.)

16        Similar to the situation in *Youngblood*, in Plaintiff's situation, by granting the preliminary

17   injunction in favor of Plaintiff, WACHOVIA would suffer almost no injury. Plaintiff still has title to

18   the property and such would remain for the duration of this action.

19        The Trustee's Sale is set for December 29, 2010. Please see **Exhibit "2."**

20        However, if WACHOVIA is not restrained from evicting Plaintiff, Plaintiff will lose his

21   home and suffer the hardship of having to find another place to live. Plaintiff has resided in his home

22   for the past several years, and will suffer irreparable damages which cannot be compensated through

23   monetary means.

24

25

26

27

28

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

6

Exhibit B to Notice of Removal
page 49

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this court order a temporary restraining order and preliminary injunction preventing WACHOIVA from evicting him from the subject real property during the pending litigation.

DATED: December 28, 2010                     LAW OFFICES OF MOSES S. HALL,

                                              BY: _____
                                                   MOSES S. HALL,
                                                   Attorney for Plaintiff,
                                                   ALONZO MITCHELL

EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

7

# DECLARATION OF ALONZO MITCHELL
## IN SUPPORT OF
## EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER

I, ALONZO MITCHELL, declare as follows:

1.     I am the plaintiff in the above entitled matter. The facts that I am about to relate are within my personal knowledge, and if called as a witness to testify to said facts would and could do so competently.

2.     On or about May 19, 2005, I obtained a thirty-year mortgage from World Savings Bank, FSB in the amount of $685,000.00 for the Subject Property.

3.     I am informed and believe that Defendant WACHOVIA MORTGAGE ("WACHOVIA") acquired all the assets including said loan from World Savings Bank, FSB, and thus maintains the status as successor in interest.

4.     I have owned and continually occupied the Subject Property as my principal residence.

5.     I have recently retained Moses S. Hall to represent me in my case against the Defendants.

6.     In 2010, the Defendants recorded a notice of default and election to sell under deed of trust on my property.

7.     At no time prior to the recording of the notice of default was I contacted by WACHOVIA in order to discuss my financial situation and options in avoiding foreclosure.

8.     On or about November 26, 2010, Defendants recorded a Notice of Trustee's Sale on my property. A true and correct copy of said Notice of Trustee's Sale is attached as Exhibit "2" to this Application.

9.     Defendants have scheduled the sale of my home for December 29, 2010.

10.     I will suffer great and irreparable harm if Defendants are not restrained from instituting foreclosure proceeding against me throughout the pendency of this litigation. If such is allowed, I will lose my ownership and possession of my home before the merits of this action can be heard.

I declare under penalty of perjury as defined by the State of California that the foregoing is true and correct. Executed this 28 day of December, 2010 at Fullerton, California.

Alonzo Mitchell

**DECLARATION OF MOSES S. HALL**
**IN SUPPORT OF**
**EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

I, Moses S. Hall, declare as follows:

1.      I am the attorney for the Plaintiff in the above entitled matter. The facts that I am about to relate are within my personal knowledge, and if called as a witness to testify to said facts would and could do so competently.

2.      On or about May 19, 2005, Plaintiff obtained a thirty-year mortgage from World Savings Bank, FSB in the amount of $685,000.00 for the Subject Property.

3.      I am informed and believe that Defendant WACHOVIA MORTGAGE ("WACHOVIA") acquired all the assets including said loan from World Savings Bank, FSB and thus maintains the status as successor in interest.

4.      Plaintiff recently retained me to help him save his property from Defendant's impending foreclosure.

5.      The facts of Plaintiff's case evidence a violation of California Civil Code section 2923.5; among other things.

6.      Plaintiff's home is scheduled to be sold December 29, 2010. Please See **Exhibit "2"** to this Ex Parte Application.

7.      As such, Plaintiff is in danger of losing his home to foreclosure.

DECLARATION FOR EX PARTE APPLICATION FOR TEMPORARY RESTRAINING
ORDER
1

Exhibit B to Notice of Removal
page 53

8.    Plaintiff will suffer great and irreparable harm if Defendants are not restrained from continuing the foreclosures process against him throughout the pendency of this litigation. If such is allowed, Plaintiff will lose his ownership and possession of his home before the merits of this action can be heard.

I declare under penalty of perjury as defined by the State of California that the foregoing is true and correct. Executed this 28th day of December, 2010 at Fullerton, California.

_Moses S. Hall_

Moses S. Hall

**DECLARATION FOR EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**
2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

STEWART TITLE OF CALIFORNIA INC.
MAJOR ACCOUNTS DIVISION

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖    63.00
2005000416897 04:29pm 05/31/05
116 81 D11 20
0.00 0.00 0.00 0.00 57.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:
WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER:    0029556958

NOTE AMOUNT:    $548,000.00

94505993

FOR RECORDER'S USE ONLY

# DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS
PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND
AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES
AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE
RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY
PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF
TRUST IS   $685,000.00 WHICH IS  125% OF THE ORIGINAL PRINCIPAL
NOTE AMOUNT.

I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
   (A)   Security Instrument. This Deed of Trust, which is dated  MAY 19, 2005 * * *
* * * will be called the "Security Instrument."

   (B)   Borrower. ALONZO MITCHELL, A MARRIED MAN

sometimes will be called "Borrower" and sometimes simply "I" or "me."

   (C)   Lender. WORLD SAVINGS BANK, FSB, * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR
ASSIGNEES, will be called "Lender." Lender is  A FEDERAL SAVINGS BANK * * * * *
* * * * * * * * which is organized and exists under the laws of the United States. Lender's
address is 1901 HARRISON STREET, OAKLAND,
CALIFORNIA 94612.

SD001A (01.30.05/1-05) A01A
DEFERRED INTEREST

DEED OF TRUST-ADJUSTABLE
Page 1

CA

LENDER'S USE ONLY

0029558958

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. $548,000.00 * * . plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by JUNE 15, 2035 * * * * * * * ("Maturity Date").

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and GOLDEN WEST SAVINGS ASSOCIATION SERVICE CO., A CALIFORNIA CORPORATION * * * * * * is the "Trustee."

II. **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**
I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i) pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii) pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii) keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III. **DESCRIPTION OF THE PROPERTY**
I give Trustee rights in the Property described below:

(i) The property which is located at 15881 LAS SOLONAS STREET, WESTMINSTER, CA 92883. * * * * * * * * * * * * * * * * The legal description of the property is attached as Exhibit "A" which is made a part of this Security Instrument. This property is called the "Described Property."

(ii) All buildings and other improvements that are located on the Described Property;

SD00181 (01.30.05/1-05) A01B
DEFERRED INTEREST

DEED OF TRUST-ADJUSTABLE
Page 2

CA

Exhibit B to Notice of Removal
page 57

0029556958

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY
I promise that (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

1.   **BORROWER'S PROMISE TO PAY**
I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.   **PAYMENTS FOR TAXES AND INSURANCE**
   (A)   **Borrower's Obligations**
I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (01.30.05/1-06) A01D                  DEED OF TRUST-ADJUSTABLE                  CA
Page 3

**(B)   Escrow Accounts**

0029556958

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.    APPLICATION OF BORROWER'S PAYMENTS                        0028556958

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

4.    BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.    BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered

SD001E (01.30.06/1-05) A01F                    DEED OF TRUST-ADJUSTABLE
                                                        Page 5                                    CA

Exhibit B to Notice of Removal
page 60

0029556958

by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

SD001F (01.30.05/1-06) A01G      DEED OF TRUST-ADJUSTABLE      CA
Page 6

6.    **BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

0029566958

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

7.    **LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Section 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

8.    **LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

8.    **AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if

SD001G (01.30.05/1-05) A01H

DEED OF TRUST-ADJUSTABLE
Page 7

CA

Exhibit B to Notice of Removal
page 62

0029556958

only a part of the Property is taken, the Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

10.   **CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**
      **(A)   Borrower's Obligations**
            Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the monthly payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

            Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

      **(B)   Lender's Rights**
            Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

11.   **OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**
            Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

            Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

            Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made

SD001H (01.30.05/1-05) A011                    DEED OF TRUST-ADJUSTABLE                    CA
                                                       Page 8

0028556858

In this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.    MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

**13.    LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

**14.    NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at 15861 LAS SOLONAS STREET, WESTMINSTER, CA  92683. " * * * * * * * * * * * * * * * * * * *
A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used in This Deed of Trust" unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

**15.    GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

**16.    BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

**17.    LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the

SD0011 (01.30.08/1-08) A01J          DEED OF TRUST-ADJUSTABLE                    CA

Page 9

Exhibit B to Notice of Removal
page 64

0029656958

tanants may make those rental payments to Lender without having to ask (i) Lender whether I
have failed to keep my promises and agreements under this Security Instrument, or (ii) me for
my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in
Paragraph 28, I understand and agree that (A) my right to occupy the Property ceases at the
time the Property is sold; (B) I shall have no right to occupy the Property after such sale
without the written consent of the new owner of the Property; and (C) my wrongful and
unlawful possession of the Property may subject me to monetary damages, including the loss
of reasonable rent and the cost of eviction. All rental payments collected by Lender or by a
receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay
the costs of collecting rental payments and of managing the Property. If any part of the rental
payments remains after those costs have been paid in full, the remaining part will be used to
reduce the Sums Secured. The costs of managing the Property may include the receiver's
fees, reasonable attorneys' fees and the costs of any necessary bonds.

18.    INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS
       An assignment is a transfer of rights to another. I may have rights to bring legal
action against persons, other than Lender, for injury or damage to the Property or in
connection with the loan made to me by Lender and which arose or will arise before or after
the date of this Security Instrument. These rights to bring legal action may include but are not
limited to an action for breach of contract, fraud, concealment of a material fact, or for
intentional or negligent acts. I assign these rights, and any and all proceeds arising from these
rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these
rights in its own name and may apply any proceeds resulting from this assignment to the
Sums Secured after deducting any expenses, including attorneys' fees, incurred in enforcing
these rights. At the request of Lender, I will sign any further assignments or other documents
that may be necessary to enforce this assignment. I will notify Lender immediately if I
believe I have the right to bring any such legal action against any persons, and will notify
Lender immediately if I assert any claim or demand against or commence any legal action
against any such person. If I receive any proceeds from any persons besides Lender in
connection with any such claim, demand or legal action, I will immediately deliver such
proceeds to Lender.

19.    CLERICAL ERRORS
       In the event Lender at any time discovers that this Security Instrument, the Secured
Notes or any other document related to this loan, called collectively the "Loan Documents,"
contains an error which was caused by a clerical mistake, calculation error, computer error,
printing error or similar error, I agree, upon notice from Lender, to execute such
documentation as Lender deems necessary to correct any such error(s) and I also agree that I
will not hold Lender responsible for any damage to me which may result from any such error.

20.    LOST, STOLEN OR MUTILATED DOCUMENTS
       If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender
delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to
Lender a Loan Document identical in form and content which will have the effect of the
original for all purposes.

21.    WAIVER OF STATUTE OF LIMITATIONS
       I will waive, within applicable law, the pleading of the statute of limitations as a
defense to enforce this Security Instrument, including any obligations referred to in this
Security Instrument or Secured Notes.

22.    CAPTIONS
       The captions and headings at the beginning of each paragraph of this Security
Instrument are for reference only and will not be used in the interpretation of any provision
of this Security Instrument.

SD001J (01.30.08/1-08) A01K          DEED OF TRUST-ADJUSTABLE                          CA
                                            Page 10

**23.  MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.  CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A)  If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

(B)  The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vii) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)  If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender. In lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)  I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

SD001K (01.30.06/1-06) A01L

DEED OF TRUST-ADJUSTABLE
Page 11

CA

Exhibit B to Notice of Removal
page 66

**25. FUTURE ADVANCES**

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

0029556958

**26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

_Acceleration of Payment of Sums Secured._ Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fall to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

_Exception to Acceleration of Payment of Sums Secured._ If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**27. SUBSTITUTION OF TRUSTEE**

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (01.30.06/1-05) A01M

DEED OF TRUST-ADJUSTABLE
Page 13

CA

**0029558958**

**28.   RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

**29.   RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

**30.   STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

SD001M (01.30.05/1-05) A01N                    DEED OF TRUST-ADJUSTABLE                    CA
                                                    Page 13

0028668958

**31.   ( X )   QUICK QUALIFYING LOAN PROGRAM**
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.   ( X )   OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that    (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (01.30.08/1-05) A010

DEED OF TRUST-ADJUSTABLE
Page 16

CA

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

0029556958

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
ALONZO MITCHELL

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

8D0010 1 (01.30.06/1-05) A01F

DEED OF TRUST-ADJUSTABLE
PAGE 15 OF 15

CA

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of *Los Angeles* } ss.

On *5-19-05* before me, *L. Wait, notary public*
        Date                              Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared *Alonzo Mitchell*
                                    Name(s) of Signer(s)

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                    *L. Wait*
                    Signature of Notary Public

Place Notary Seal Above

**L. MARTIN**
Commission # 1551944
Notary Public - California
Los Angeles County
My Comm. Expires Feb 12, 2009

―――――――――――― **OPTIONAL** ――――――――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: *Deed of Trust*

Document Date: *5-19-05* _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402   Item No. 5907   Reorder: Call Toll-Free 1-800-876-6827

## GOVERNMENT CODE SECTION 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY: L. Martin

DATE COMMISSION EXPIRES: 02/12/09

COUNTY WHERE BOND IS FILED: Los Angeles

COMMISSION NO.: 1551944

VENDOR NO.: NNA1

PLACE OF EXECUTION: Anaheim

DATE: 05/24/05

Stewart Title of California

Ana I. Mestas



## Exhibit "A"

94505993

DESCRIPTION: THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OP ORANGE,
STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

*LOT 15 OF TRACT NO. 4810, IN THE CITY OF WESTMINSTER, COUNTY OF ORANGE, STATE OF
CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 177, PAGES 18 TO 20 INCLUSIVE OF
MISCELLANEOUS MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAD COUNTY .*

12/28/2010 16:48 FAX                                                          Ø 034/039

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of *Los Angeles* } ss.

On *5-19-05* before me, *L. Mart notary public*
        Date                        Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally    appeared *Barbara A. Mitchell*
                                        Name(s) of Signer(s)

☐ personally known to me

☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*L. Mart*
Signature of Notary Public

**L. MARTIN**
Commission # 1551944
Notary Public - California
Los Angeles County
My Comm. Expires Feb 12, 2009

Place Notary Seal Above

----------------------------- **OPTIONAL** -----------------------------
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**
Title or Type of Document: *Deed of Trust*

Document Date: *5-19-05*                    Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

© 2004 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402      Item No. 5907      Reorder: Call Toll-Free 1-800-876-6827

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# EXHIBIT 2

25
26
27
28

Dec-26-10  09:59                                                                    P.03

Recording requested by:
LSI Title Company

When Recorded Mail To:
NDEx West, L.L.C.
15000 Surveyor Boulevard, Suite 500
Addison, Texas 75001-9013
(866) 795-1852

APN #: 108-612-15
Property Address:
15861 LAS SOLONAS STREET
WESTMINSTER, CALIFORNIA 92683

NTSP20100015003412

Trustee Sale No.: 20100015003412     Title Order No.: 100350599     FHA/VA/PMI No.:

**Space above this line for Recorder's use only**

# NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 05/19/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

NDEX WEST, LLC, as duly appointed Trustee under and pursuant to Deed of Trust Recorded on 05/31/2005 as Instrument No. 2005000416897 of official records in the office of the County Recorder of ORANGE County, State of CALIFORNIA.

EXECUTED BY:     ALONZO MITCHELL,
WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (payable at time of sale in lawful money of the United States).
DATE OF SALE:   12/29/2010        TIME OF SALE:        12:00 PM
PLACE OF SALE:  AT THE NORTH FRONT ENTRANCE TO THE COUNTY COURTHOUSE, 700 CIVIC CENTER
                DRIVE WEST, SANTA ANA, CA.
STREET ADDRESS and other common designation, if any, of the real property described above is purported to be:
                15861 LAS SOLONAS STREET, WESTMINSTER, CALIFORNIA 92683
APN#:           108-612-15

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $679,086.21.   The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the county where the real property is located.

FOR TRUSTEE SALE INFORMATION PLEASE CALL:
AGENCY SALES & POSTING
3210 EL CAMINO REAL, SUITE 200
IRVINE, CA 92602
714-730-2727
www.lpsasap.com

NDEx West, L.L.C. MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.   ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

NDEx West, L.L.C. as Trustee

_____    Dated: 11/26/2010

FCUR_NoticeOfTrusteeSale.rpt - Pub - 01/22/2010 - Ver-28

Page 1 of 1

Moses S. Hall, Esq., (SBN 153759)
LAW OFFICE OF MOSES S. HALL
2651 E. Chapman Avenue, Suite 110
Fullerton, California 92831
Telephone: (714) 738-4830
Fax: (714) 992-7916

Attorney for Plaintiff
ALONZO MITCHELL

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

DEC 28 2010

ALAN CARLSON, Clerk of the Court
*M. Destin*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE

CENTRAL JUSTICE CENTER

| | |
|---|---|
| ALONZO MITCHELL, an individual,<br><br>     Plaintiff,<br><br>vs.<br><br>WACHOVIA MORTGAGE, a division of WELLS FARGO BANK, N.A. and DOES 1 through 50, inclusive,<br><br>     Defendants. | Case No.<br><br>DECLARATION RE: EX PARTE NOTICE<br><br>**Date:** December 28, 2010<br>**Time:** 1:30 pm<br>**Dept.:** C15 |

Plaintiff, ALONZO MITCHELL, (hereinafter "PLAINTIFF"), by and through his

attorney of record hereby submits this Declaration Re Ex Parte Notice.

I, Karen Carter, hereby declare as follows:

Declaration Re: Ex-Parte Notice
1

1. If called to testify to the facts set forth below, I could and would do so competently of my own personal knowledge.

2. On December 27, 2010, I called Wachovia Mortgage, at 800-282-3458 at approximately 1:10 p..m. A man by the name of Adrian Rodriguez answered. I informed him that I would like to be directed to the foreclosure department to give notice of an Ex-Parte Hearing. Mr. Rodriguez informed me that he was taking calls for the foreclosure department and could take notice of the ex parte hearing. I informed him that I was calling from the Law Offices of Moses Hall on behalf of Alonzo Mitchell, regarding loan no. 0029556958, and that we would be moving ex parte on December 28, 2010, at 1:30, at the Orange County Superior Court, Department C15, 700 Civic Center Drive West, Santa Ana, California for a temporary restraining order to postpone the trustee sale scheduled to take place on December 29, 2010.

3. On December 27, 2010, I called NDEX WEST, at 800-866-795-1852 at approximately 1:25 p.m. A woman by the name of Christina answered. I informed her that I would like to be directed to the foreclosure department or legal department to give notice of an Ex-Parte Hearing. Christina informed me that she works in the foreclosure department and could take telephonic notice. I asked for her full name, and she said Christina C, and that she could only give her last initial. I informed her that I was calling from the Law Offices of Moses Hall on behalf of Alonzo Mitchell, regarding loan no. 0029556958, and that we would be moving ex parte on December 28, 2010, at 1:30, at the Orange County Superior Court, Department C15, 700 Civic Center Drive West, Santa Ana, California for a temporary restraining order to postpone the trustee sale scheduled to take place on December 29, 2010.

Declaration Re: Ex-Parte Notice
2

4. On December 27, 2010, I called the law firm of Severson Werson, at 415-398-3344 at approximately 1:42 p.m. I asked to speak with Eric Kemp or his assistant. I was transferred to Anne Ogonowski who informed me that Mr. Kemp is not in the office this week. I informed Ms. Ogonowski that I was calling from the Law Offices of Moses Hall on behalf of Alonzo Mitchell, regarding loan no. 0029556958, and that we would be moving ex parte on December 28, 2010, at 1:30, at the Orange County Superior Court, Department C15, 700 Civic Center Drive West, Santa Ana, California for a temporary restraining order to postpone the trustee sale scheduled to take place on December 29, 2010.

I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on December 27, 2010, at Fullerton, California.

Karen Carter, Declarant

Declaration Re: Ex-Parte Notice
3

**EXHIBIT C**

Back to Search Bank Find

**History of Wachovia Mortgage, Fsb, North Las Vegas, Nevada (FDIC Cert: 27076)**

| | Date | Event |
|---|---|---|
| 1 | 10/8/1987 | Institution established. Original name: Watchung Hills Bank For Savings (27076) |
| 2 | 1/21/1995 | Changed name to **World Savings Bank, F.S.B. (27076).** |
| 3 | 1/21/1995 | Changed primary regulatory agency from Federal Deposit Insurance Corporation to Office Of Thrift Supervision. |
| 4 | 7/24/1996 | Moved bank headquarters from Warren, New Jersey to El Cajon, California. |
| 5 | 8/30/1996 | Moved bank headquarters from El Cajon, California to Oakland, California. |
| 6 | 12/31/2000 | Acquired World Savings And Loan Association, A Federal Savings And Loan Associati (31315) in Oakland, California. |
| 7 | 4/16/2001 | Changed name to **World Savings Bank, Fsb (27076)**. |
| 8 | 12/31/2007 | Changed name to **Wachovia Mortgage, Fsb (27076)**. |
| 9 | 12/31/2007 | Moved bank headquarters from Oakland, California to North Las Vegas, Nevada. |
| 10 | 11/1/2009 | **Merged into and subsequently operated as part of Wells Fargo Bank, National Association in Sioux Falls, South Dakota (3511)** |
| 11 | 11/1/2009 | Changed name to **Wells Fargo Bank Southwest, National Association (27076).** |
| 12 | 11/1/2009 | Changed institution class to Insured Commercial Bank, National, Member Frs. |
| 13 | 11/1/2009 | Changed organization type to Commercial Bank. |
| 14 | 11/1/2009 | Changed primary regulatory agency from Office Of Thrift Supervision to Comptroller Of The Currency. |
| 15 | 11/7/2009 | Acquired Wachovia Bank Of Colorado, Interim National Association (59019) in Denver, Colorado. |
| 16 | 3/20/2010 | Acquired Wachovia Bank, National Association (33869) in Charlotte, North Carolina. |
| 17 | 3/20/2010 | Acquired Wachovia Bank Of Delaware, National Association (33931) in Wilmington, Delaware. |
| 18 | 4/10/2010 | Acquired Wachovia Card Services, National Association (58496) in Atlanta, Georgia. |
| 19 | 5/10/2010 | Acquired Wells Fargo Hsbc Trade Bank, National Association (34075) in San Francisco, California. |
| 20 | 11/1/2010 | Acquired Wells Fargo Alaska Trust Company, National Association (57755) in Anchorage, Alaska. |

Back

Exhibit C to Notice of Removal
page 80

12/15/2010



Comptroller of the Currency
Administrator of National Banks

Washington, DC 20219

## CERTIFICATE

I, John Walsh, Acting Comptroller of the Currency, do hereby certify that the document hereto attached is a true and correct copy, as recorded in this Office, of the currently effective Articles of Association for "Wells Fargo Bank, National Association," Sioux Falls, South Dakota, (Charter No. 1).



IN TESTIMONY WHERE OF, I have hereunto subscribed my name and caused my seal of office to be fixed to these presents at the Treasury Department, in the City of Washington and District of Columbia, this October 20, 2010.

*John Walsh*

Acting Comptroller of the Currency

Exhibit C to Notice of Removal
page 81

# ARTICLES OF ASSOCIATION
## OF
## WELLS FARGO BANK, NATIONAL ASSOCIATION

## ARTICLE I - NAME

The title of this Association shall be Wells Fargo Bank, National Association. The Association may also use the abbreviation Wells Fargo Bank, N.A.

## ARTICLE II - OFFICES

1. Main Office. The main office of this Association shall be in the City of Sioux Falls, County of Minnehaha, State of South Dakota. The Board of Directors shall have the power to change the location of the main office to any other place within the limits of the City of Sioux Falls, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

2. Branch Offices. The Board of Directors shall have the power to establish or change the location of any branch or branches of this Association to any other location, without the approval of the shareholders but subject to the approval of the Comptroller of the Currency.

3. Conduct of Business. The general business of the Association shall be conducted at its main office and its branches.

## ARTICLE III - BOARD OF DIRECTORS

1. Number. The Board of Directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full Board of Directors or by resolution of the shareholders at any annual or special meeting thereof.

2. Qualification. Each director, during the full term of his or her directorship, shall own a minimum of $1,000 par value of stock of this Association or an equivalent interest, as determined by the Comptroller of the Currency, in any company which has control over this Association within the meaning of Section 2 of the Bank Holding Company Act of 1956.

3. Vacancy. The Board of Directors, by the vote of a majority of the full Board, may, between annual meetings of shareholders, fill vacancies created by the death, incapacity or resignation of any director and by the vote of a majority of the full Board may also, between annual meetings of shareholders, increase the membership of the Board by not more than four members and by like vote appoint qualified persons to fill the vacancies created thereby; provided, however, that at no time shall there be more than twenty-five directors of this Association; and provided further, however, that not more than two members may be added to

Exhibit C to Notice of Removal
page 82

the Board of Directors in the event that the total number of directors last elected by shareholders was fifteen or less.

4. <u>Appointment of Officers</u>. The Board of Directors shall appoint one of its members President of this Association, who shall act as Chairman of the Board, unless the Board appoints another director to act as Chairman. In the event the Board of Directors shall appoint a President and a Chairman, the Board shall designate which person shall act as the chief executive officer of this Association. The Board of Directors shall have the power to appoint one or more Vice Presidents and to appoint a Cashier and such other officers and employees as may be required to transact the business of this Association.

5. <u>Powers</u>. The Board of Directors shall have the power to define the duties of the officers and employees of this Association; to fix the salaries to be paid to them; to dismiss them; to require bonds from them and to fix the penalty thereof; to regulate the manner in which the increase of the capital of this Association shall be made; to manage and administer the business and affairs of this Association; to make all Bylaws that it may be lawful for them to make; and generally to do and perform all acts that it may be legal for a Board of Directors to do and perform.

## ARTICLE IV - MEETINGS OF SHAREHOLDERS

1. <u>Annual Meeting</u>. The annual meeting of the shareholders for the election of directors and the transaction of whatever other business may be brought before said meeting shall be held at the main office, or such other place as the Board of Directors may designate, on the day of each year specified therefor in the Bylaws, but if no election is held on that day, it may be held on any subsequent day according to the provisions of law; and all elections shall be held according to such lawful regulations as may be prescribed by the Board of Directors.

2. <u>Special Meetings</u>. The Board of Directors, the Chairman, the President, or any one or more shareholders owning, in the aggregate, not less than 25 percent of the stock of this Association, may call a special meeting of shareholders at any time.

3. <u>Notice of Meetings</u>. Unless otherwise provided by the laws of the United States, a notice of the time, place, and purpose of every annual and special meeting of the shareholders shall be given by first-class mail, postage prepaid, mailed at least ten days prior to the date of such meeting to each shareholder of record at his or her address as shown upon the books of this Association.

4 <u>Written Consents</u>. Any action required or permitted to be taken at an annual or special meeting of the shareholders of the Association may be taken without prior written notice and without any meeting if such action is taken by written action, containing a waiver of notice, signed by all of the shareholders entitled to vote on that action.

## ARTICLE V - CAPITAL

1. <u>Capitalization</u>. The amount of authorized capital stock of this Association shall be $1,122,000,000, divided into 112,200,000 shares of common stock of the par value of Ten

-2-

Exhibit C to Notice of Removal
page 83

Dollars ($10.00) each; but said capital stock may be increased or decreased from time to time, in accordance with the provisions of the laws of the United States.

2. <u>Voting Rights</u>. Each holder of common stock of the Association shall be entitled to vote on all matters, one vote for each share of common stock held by such holder. No holder of shares of the capital stock of any class of this Association shall have any pre-emptive or preferential right of subscription to any shares of any class of stock of this Association, whether now or hereafter authorized, or to any obligations convertible into stock of this Association, issued or sold, nor any right of subscription to any thereof other than such, if any, as the Board of Directors, in its discretion, may from time to time determine and at such price as the Board of Directors may from time to time fix.

3. <u>Debt Obligations</u>. The Association, at any time and from time to time, may authorize and issue debt obligations, whether or nor subordinated, without the approval of the shareholders.

## ARTICLE VI - PERPETUAL EXISTENCE

The corporate existence of this Association shall continue until terminated in accordance with the laws of the United States.

## ARTICLE VII - INDEMNIFICATION

To the extent permitted by 12 CFR 7.2014 and consistent with the requirements of 12 USC 1828(k) and the implementing regulations thereunder:

(a) <u>Elimination of Certain Liability of Directors</u>. A director of the Association shall not be personally liable to the Association or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Association or its shareholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit.

(b)(1) <u>Right to Indemnification</u>. Each person who was or is made a party or is threatened to be made a party to or is involved in any action, suit or proceeding, whether civil, criminal, administrative or investigative (hereinafter a "proceeding"), by reason of the fact that he or she, or a person of whom he or she is the legal representative, is or was a director or officer of the Association or is or was serving at the request of the Association as a director, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action or inaction in an official capacity as a director, officer, employee, or agent or in any other capacity while serving as a director, officer, employee or agent, shall be indemnified and held harmless by the Association to the fullest extent authorized by the Delaware General Corporation Law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Association to provide broader indemnification rights than said law permitted the Association to provide prior to such amendment), against all expense, liability and loss (including attorneys' fees, judgments, fines,

-3-

Exhibit C to Notice of Removal
page 84

ERISA excise taxes or penalties and amounts paid or to be paid in settlement) reasonably incurred or suffered by such person in connection therewith and such indemnification shall continue as to a person who has ceased to be a director, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators; provided, however, that the Association shall indemnify any such person seeking indemnification in connection with a proceeding (or part thereof) initiated by such person only if such proceeding (or part thereof) was authorized by the Board of Directors of the Association.  The right to indemnification conferred in this paragraph (b) shall be a contract right and shall include the right to be paid by the Association the expenses incurred in defending any such proceeding in advance of its final disposition; provided, however, that, if the Delaware General Corporation Law requires, the payment of such expenses incurred by a director of officer in his or her capacity as a director or officer (and not in any other capacity in which service was or is rendered by such person while a director or officer, including, without limitation, service to an employee benefit plan) in advance of the final disposition of a proceeding, shall be made only upon delivery to the Association of an undertaking, by or on behalf of such director or officer, to repay all amounts so advanced if it shall ultimately be determined that such director of officer is not entitled to be indemnified under this paragraph (b) or otherwise.  The Association may, by action of its Board of Directors, provide indemnification to employees and agents of the Association with the same scope and effect as the foregoing indemnification of directors and officers.

(2) <u>Non-Exclusivity of Rights</u>.  The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this paragraph (b) shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Association, by-law, agreement, vote of shareholders or disinterested directors or otherwise.

(3) <u>Insurance</u>. The Association may maintain insurance, at its expense, to protect itself and any director, officer, employee or agent of the Association or another corporation, partnership, joint venture, trust or other enterprise against any such expense, liability or loss, whether or not the Association would have the power to indemnify such person against such expense, liability or loss under the Delaware General Corporation Law.

## ARTICLE VIII - AMENDMENT

These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of holders of such greater amount.

WFBArticles - Phase II - Final

-4-

Exhibit C to Notice of Removal
page 85

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the following document entitled: **NOTICE OF REMOVAL BY DEFENDANT WACHOVIA MORTGAGE, a division of WELLS FARGO BANK, N.A. PURSUANT TO 28 U.S.C. § 1332 [DIVERSITY JURISDICTION]** on all interested parties in said case addressed as follows:

Served Electronically via Court's CM/ECF System:
**Served by Other Means:**

*Counsel for Plaintiff:*

Moses S. Hall, Esq.
LAW OFFICES OF MOSES S. HALL
2651 E. Chapman Avenue, Suite 110
Fullerton, California 92831

Telephone: (714) 738-4830
Facsimile: (714) 992-7916

☒ **BY MAIL:** By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Pasadena, California, in sealed envelopes with postage fully thereon.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. This declaration is executed in Pasadena, California, on **January 5, 2011.**

_____
Dorothy Pandy
(Print name)

_____
(Signature)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge James V. Selna and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV11- 28 JVS (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [X] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

I (a) PLAINTIFFS (Check box if you are representing yourself ☐)

ALONZO MITCHELL, an individual

DEFENDANTS

WELLS FARGO BANK, N.A., an entity form unknown, and NDEX WEST, LLC, a business organization form unknown, and Does 1 to 100

(b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Moses S. Hall, Esq., LAW OFFICE OF MOSES S. HALL;
2651 E. Chapman Avenue, Suite 110, Fullerton, CA 92831;
Tel: (714) 738-4830; Fax: (714) 992-7916

Attorneys (If Known)

Jeremy E. Shulman, Esq. (#257582)   Matthew J. Pero, Esq. (130746)
jshulman@afrct.com   mpero@afrct.com
Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP; 199 S. Los Robles Ave., #600, Pasadena, CA 91101; Tel: (626) 535-1900; Fax: (626) 577-7764

II. BASIS OF JURISDICTION (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

IV. ORIGIN (Place an X in one box only.)

☐ 1 Original Proceeding   ☑ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

V. REQUESTED IN COMPLAINT:   JURY DEMAND: ☐ Yes   ☑ No (Check 'Yes' only if demanded in complaint.)

CLASS ACTION under F.R.C.P. 23: ☐ Yes ☑ No   ☑ MONEY DEMANDED IN COMPLAINT: $ min. 685,000.00 loan loss

VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. §1332.

VII. NATURE OF SUIT (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 210 Land Condemnation | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 220 Foreclosure | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 230 Rent Lease & Ejectment | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 240 Torts to Land | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 245 Tort Product Liability | ☐ 340 Marine | | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 290 All Other Real Property | ☐ 345 Marine Product Liability | BANKRUPTCY ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE/PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | | | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | | | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | | | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | | | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | | | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | | | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

FOR OFFICE USE ONLY:   Case Number:   **SACV11-28 JVS(MLGx)**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)                          CIVIL COVER SHEET                          Page 1 of 2

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Wells Fargo Bank, N.A. - South Dakota |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date January 5, 2011
    Matthew J. Pero, Esq.

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Pasadena, California; my business address is Anglin, Flewelling, Rasmussen, Campbell & Trytten LLP, 199 S. Los Robles Avenue, Suite 600, Pasadena, California 91101-2459.

On the date below, I served a copy of the following document entitled:

## CIVIL COVER SHEET

on all interested parties in said case addressed as follows:

### Served by Other Means:

*Counsel for Plaintiff:*

Moses S. Hall, Esq.
LAW OFFICES OF MOSES S. HALL
2651 E. Chapman Avenue, Suite 110
Fullerton, California 92831

Telephone: (714) 738-4830
Facsimile: (714) 992-7916

☒ **BY MAIL:** By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Pasadena, California, in sealed envelopes with postage fully thereon.

☒ **FEDERAL:** I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made. This declaration is executed in Pasadena, California, on **January 5, 2011.**

_____
    Dorothy Pandy
    (Print name)

_____
    (Signature)

1                    CERTIFICATE OF SERVICE